RYDER TRUCK RENTAL, Inc. *v.* H. B. WREN OIL DISTRIBUTING COMPANY, Inc.

5-6122                              489 S.W. 2d 236

Opinion delivered January 22, 1973

*Smith, Stroud, McClerkin & Conway,* by: *R. Gary Nutter,* for appellant.

*Autrey & Weisenberger,* for appellee.

J. FRED JONES, Justice. This is an appeal by Ryder Truck Rental, Inc., hereafter called Ryder, from a circuit

court order denying its motion to set aside a default judgment rendered against it in the amount of $7,021.43 for diesel fuel and gasoline sold by an independent contractor operating Scotty's Truck Stop in Texarkana and charged to credit cards issued to Ryder by American Oil Co., the accounts having been assigned to the appellee H. B. Wren Oil Distributing Company, Inc., hereafter called Wren.

Ryder is a Florida domiciled corporation authorized to do business in Arkansas. It is engaged in a nationwide truck rental business with its home office in Miami, Florida, and branch offices in Pittsburgh, Pennsylvania, and Denver, Colorado. Through its Pittsburgh branch Ryder leased a number of trucks and trailer rigs to Kelly Tire Co. who operated the trucks through Texarkana, Arkansas. Kelly hired its own truckdrivers and they purchased fuel as needed on credit cards issued to Ryder. The individual driver would sign the usual credit card receipts for the purchases and Ryder would pay for the fuel at regular intervals and then collect from Kelly under their lease agreement. The operator of Scotty's Truck Stop assigned 151 of the credit card purchase accounts totaling $7,021.43 to Wren in exchange for fuel and merchandise. When the account was presented to Ryder for payment, a controversy arose as to the validity of some of the credit card purchases.

After considerable negotiation by mail and phone between Wren's attorneys and Ryder officials and Ryder's general counsel in Miami, Florida, Wren filed suit on the verified account and obtained proper service on Ryder's designated agent for service in Arkansas. Immediately upon filing the suit, Wren's attorney wrote a letter to Ryder's attorney advising that suit had been filed and enclosing a copy of the complaint. The suit was filed and service issued on January 5, 1972, and service was had on January 7, 1972. No responsive pleading of any kind was filed by Ryder, so on February 18, 1972, the trial court entered a default judgment in favor of Wren for $7,021.43 as prayed in the complaint. On February 29, 1972, through local attorneys, Ryder filed its motion to set aside the default judgment and following a hearing on March 17, 1972, the motion was denied.

On appeal to this court Ryder contends that the trial court abused its discretion when it sustained Wren's objection to Ryder's oral motion to amend its original motion to set aside the default judgment; that the decision of the trial court was a hindrance to justice, and that the trial court erred in holding that Ryder had not proven such unavoidable casualty or excusable neglect as would justify setting aside the default judgment.

The facts as they relate to the default appear as follows: After considerable negotiations between the parties and their attorneys, and after being unable to arrive at a settlement on the account, complaint was filed and service had on Ryder's duly designated agent for service as already stated. It appears that upon receipt of process served by the sheriff of Pulaski County on January 7, the agent for service in Little Rock immediately forwarded same to Ryder's district office in Denver, Colorado, as was the usual and customary procedure, and the Denver office in turn forwarded same to Ryder's home office in Miami, Florida, which was also the usual procedure followed by Ryder in such matters. The motion filed by local counsel to set aside the default judgment stated that Ryder had and still has a meritorious defense to the cause of action stated in the original complaint and the attorney's affidavit was attached to the motion. Among other things the affidavit stated that the affiant attorney was contacted by Ryder's general counsel Gerry B. Turner in Miami, Florida, on February 21, 1972, and that Mr. Turner advised that when the original complaint was received by Ryder, it was not acted on by Ryder for reasons unknown by Mr. Turner. The affiant stated that he was also contacted by Mr. Bob Sheehan, the district manager of Ryder in Pittsburgh, Pennsylvania; that Mr. Sheehan related to affiant that the defendant had a meritorious defense to a portion of the original complaint in that the amount claimed by Wren over and above the approximate sum of $1,600 was charged to false credit cards and that the same could be proved.

At the hearing on the motion to set aside the judgment, there was considerable discussion between the court and the attorneys as to whether a meritorious defense had been properly and timely pled by Ryder, and

whether it was necessary to set out in the written motion the facts relied on as constituting unavoidable casualty or misfortune preventing Ryder from appearing and defending within time. Ryder contended that it was not necessary to set out the facts in the pleading but was only necessary to plead that there existed facts that would constitute excusable delay or unavoidable casualty, and that the specific facts relied on were a matter of proof. The trial court did not agree with Ryder on this point, but permitted Ryder to make its proffer of proof for the record.

We find it unnecessary to discuss the propriety of the pleadings in this case for the reason that the parties apparently confused the trial court's jurisdiction and control over its judgments during the term in which judgment was rendered with its jurisdiction under Ark. Stat. Ann. § 29-506 (Repl. 1962) after it has lost control of the judgment by a lapse of the term in which it was rendered. See *Ayers* v. *Anderson-Tully Co.*, 89 Ark. 160, 116 S.W. 199. A trial court's authority for setting aside its judgment after the term in which it was rendered is found in § 29-506 as follows:

"The court in which a judgment or final order has been rendered or made, shall have power, after the expiration of the term, to vacate or modify such judgment or order.

\* \* \*

Seventh. For unavoidable casualty or misfortune preventing the party from appearing or defending. \* \* \*"

The necessary pleadings under the strict construction of this statute will not be gone into here for the reason that this statute does not apply to the case at bar.

A trial court's authority over its judgments during term time is found in Ark. Stat. Ann. § 29-501 (Repl. 1962) which simply states:

"A judgment rendered, or final order made in the circuit court, may be reversed, vacated, or modified, either by the Supreme Court, or by the court in which the judgment was rendered, or order made."

A judgment, therefore, is subject to the trial court's control *during the term* in which it is rendered. *Wells Fargo & Co.* v. *Baker Lbr. Co.,* 107 Ark. 415, 155 S.W. 122.

The trial court's jurisdiction to render a default judgment under Ark. Stat. Ann. § 29-401 (Repl. 1962) is not questioned in this case. The statute provides as follows:

"Judgment by default shall be rendered by the Court in any case where an appearance or pleading, either general or special, has not been filed within the time allowed by this Act; provided, that the Court may for good cause allow further time for filing an appearance or pleading, if application for granting further time is made before expiration of the period within which the appearance or pleading should have been filed; and that nothing in this Act shall impair the discretion of the Court to set aside any default judgment upon showing of excusable neglect, unavoidable casualty or other just cause."

The default in pleading under Ark. Stat. Ann. § 27-1135 (Repl. 1962) is not questioned in this case, and there is no question that the motion to set aside the judgment was filed during the same term of court in which the judgment was rendered, so the question simply boils down to whether the trial court abused its discretion in refusing to set aside the default judgment because of excusable neglect, unavoidable casualty or other just cause.

Ryder's general counsel from its Miami office testified in the proffer of proof on the motion to set aside the judgment, but the substance of his testimony was to the effect that someone in Ryder's Miami office simply failed to advise him that process had been served on the resident agent in Arkansas and had failed to call to his attention that a copy of the complaint and the letter accompanying same had been received in his Miami office. In *Walden* v. *Metzler,* 227 Ark. 782, 301 S.W. 2d 439, we failed to find excusable neglect or unavoidable casualty under facts very similar to those in the case at bar and we are unable to find any evidence of excusable neglect, unavoidable casualty or other just cause for setting aside the default judgment in this case.

We conclude, therefore, that the trial court did not abuse its discretion in denying Ryder's motion to set aside the default judgment. The judgment is affirmed.

Affirmed.